KAREN P. HEWITT
United States Attorney
PAUL L. STARITA
Assistant U.S. Attorney
California State Bar No. 219573
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6507
Email: paul.starita@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR0138-BEN |
| Plaintiff, | DATE: July 21, 2008 |
| | TIME: 2:00 p.m. |
| v. | |
| JONATHAN NICK MORALES, | UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: |
| Defendant. | |
| | (1) COMPEL DISCOVERY; |
| | (2) SUPPRESS STATEMENTS; AND |
| | (3) HOLD VOLUNTARINESS HEARING. |
| | TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Paul L. Starita, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's above-referenced motions together with Statement of Facts and Memorandum of Points and Authorities. This Response and Opposition is based upon the files and records of the case.

//

//

//

//

**I**

## STATEMENT OF THE CASE

On January 16, 2008, a federal grand jury in the Southern District of California returned a six-count Indictment charging defendant JONATHAN NICK MORALES ("Defendant") with (i) bringing in illegal aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and aiding and abetting, in violation of 18 U.S.C. § 2, and (ii) bringing in illegal aliens without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). Defendant was arraigned on the Indictment on January 17, 2008, and pleaded not guilty.

**II**

## STATEMENT OF THE FACTS

**A.     PRIMARY INSPECTION AREA**

On January 1, 2008, at approximately 10:45 p.m., Defendant, a citizen of the United States, applied for admission to the United States in the vehicle lanes of the San Ysidro, California, Port of Entry. Defendant was the driver and sole visible occupant of a green 1994 Saturn SC1 bearing California license plate number 4MIT293. While in the primary inspection lanes, Defendant provided two negative customs declarations to Customs and Border Protection ("CBP") Officer Aban and stated that he owned the vehicle and was going to San Diego. CBP Officer Aban's cursory inspection of Defendant's vehicle revealed abnormalities in the rear seat. Defendant was then escorted to the secondary inspection lot.

**B.     SECONDARY INSPECTION AREA**

At the secondary inspection area, CBP Officer Nieto conducted a 7-point inspection of Defendant's vehicle. This inspection revealed a human body concealed inside a non-factory compartment underneath the rear seat. CBP Officer Gonzalez confirmed that one male subject (later identified as Pedro Rivera-Cervantes) was concealed in a non-factory compartment underneath the rear seat of the vehicle driven by Defendant.

**C.     DEFENDANT'S POST-*MIRANDA* STATEMENT**

On January 2, 2008, at approximately 1:17 a.m., CBP Enforcement Officer Valdivia, in the presence of CBP Enforcement Officer Velasquez, advised Defendant of his Miranda rights in the

English language with the assistance of an acknowledgment and waiver of rights form printed in the English language. Defendant stated that he understood his rights. When Defendant was asked if he would like to make a statement, he became very emotional and began to mumble and cry. Defendant stated that he wanted to return to his cell and when he attempted to do so without being escorted by the Officers, he was handcuffed and returned to a padded detention cell. The attempted interview was recorded on a DVD.

**D.    MATERIAL WITNESSES' STATEMENT**

CBP Enforcement Officer Velasquez interviewed the smuggled alien. In sum, the smuggled alien admitted that he was an undocumented citizen of Mexico and that he was to be smuggled into the United States and his cousin was to pay the smuggling fee.

**E.    PRIOR ARRESTS FOR ALIEN SMUGGLING**

Defendant has been previously arrested on six separate occasions for alien smuggling - December 4, 2003, December 31, 2003, January 8, 2004, March 6, 2005, October 23, 2007, and November 15, 2007. Defendant's arrest for alien smuggling on January 8, 2004, resulted in Defendant being charged criminally in the Southern District of California, Criminal Case Number 04CR0135-DMS. After his plea of guilty to a sole count of bringing in illegal aliens without presentation, Defendant was sentenced to 10 months of custody and three years of supervised release on October 1, 2004.

The other arrests, including the March 6, 2005 arrest, were processed administratively. However, the March 6, 2005 arrest resulted in a violation of the terms of Defendant's supervised release in Criminal Case Number 04CR0135-DMS. On May 20, 2005, Defendant entered an admission to violating the terms of his supervised release, his supervised release was revoked, and he was committed to custody for 12 months and one day, followed by two years of supervised release.

The conduct resulting in Defendant's March 6, 2005 arrest is now charged in the Indictment in Counts 1 through 4. Specifically, on March 6, 2005, at approximately 12:23 a.m., Defendant applied for admission to the United States in the vehicle lanes of the San Ysidro, California, Port of Entry. Defendant was the driver and sole visible occupant of a 1994 Nissan Pathfinder bearing California license plate number 4DGN979. Defendant provided two negative customs declarations to the Customs

and Border Protection ("CBP") Officer. Upon inspection of Defendant's vehicle, the CBP Officer found two undocumented aliens concealed in a non-factory compartment. Defendant was then escorted to the secondary inspection lot and later interviewed.

At approximately 7:20 a.m., CBP Officer Vazquez advised Defendant of his <u>Miranda</u> rights in the English language. Defendant stated that he understood his rights and agreed to make a statement without the benefit of counsel. In sum, Defendant admitted: he was to be paid $500 to smuggle two undocumented aliens and he was to transport the undocumented aliens from Tijuana, Mexico, to a gasoline station in the United States.

## III

## POINTS AND AUTHORITIES

**A.   PRODUCTION OF DISCOVERY AND PRESERVATION OF EVIDENCE**

The United States has and will continue to fully comply with its discovery obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. To date, the United States has produced 151 pages of discovery to Defendant's counsel, including investigative reports and Defendant's statements. Also, the United States has produced a DVD of Defendant's post-arrest interview.

### 1.   **Defendant's Statements**

The United States will disclose to Defendant the substance of any relevant oral statement made by Defendant, before or after arrest, in response to interrogation by a person Defendant knew was a government agent if the United States intends to use the statement at trial. The United States will also disclose and make available for inspection, copying or photographing the following: (1) any relevant written or recorded statement by the defendant if the statement is within the United States' possession, custody, or control, and the attorney for the United States knows--or through due diligence could know--that the statement exists,[1] (2) that portion of any written record containing the substance of any relevant oral statement made before or after arrest if Defendant made the statement in response to interrogation

---

[1]   However, "the Government is not obligated by Rule 16(a) to anticipate every possible defense, assume what the defendant's trial testimony...will be, and then furnish the defendant with otherwise irrelevant material that might conflict with the defendant's testimony." <u>United States v. Gonzalez-Rincon</u>, 36 F.3d 859, 865 (9th Cir. 1994) (citation omitted).

by a person Defendant knew was a government agent, and (3) Defendant's recorded testimony before a grand jury relating to the charged offense, if any.

**2.    Arrest Reports and Notes**

The United States has already produced to Defendant all reports and notes known to the United States relating to Defendant's arrest in this case and will continue to comply with its discovery obligations.

**3.    Brady Material**

The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963).

**4.    Prior Record**

The United States has provided Defendant with a copy of Defendant's known prior criminal record under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129, 130 (9th Cir. 1990). Should the United States determine that there are any additional documents pertaining to Defendant's prior criminal record, those will be promptly provided to Defendant.

**5.    404(b) Material**

The United States will disclose, in advance of trial, the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

**6.    Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

**7.    Preservation of Evidence**

The United States has no opposition to a preservation order.

**8.    Tangible Objects**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that

are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The United States, however, need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**9.    Witnesses**

The United States will provide a list of witnesses in its trial memorandum, including law enforcement witnesses. The grand jury transcript of any person who will testify at trial will also be produced.

**10.   Jencks Act Material**

The United States will comply with its discovery obligations under the Jencks Act, Title 18, United States Code, Section 3500, and as incorporated in Rule 26.2.

**11.   Giglio Material**

The United States has complied and will continue to comply with its discovery obligations under Giglio v. United States, 405 U.S. 150 (1972).

**12.   Reports of Examinations and Tests**

The United States will provide Defendant with any scientific tests or examinations in accordance with Rule 16(a)(1)(F).

**13.   Henthorn Material**

The United States will comply with its obligations under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

//
//

**14.   Cooperating Witnesses**

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in camera inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is a confidential informant or cooperating witness who is a material witness with evidence helpful to the defense or essential to a fair determination in this case, the United States will either disclose the identity of the informant or submit the informant's identity to the Court for an in camera inspection.

**15.   Expert Witnesses**

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

**B.   THE COURT SHOULD NOT SUPPRESS DEFENDANT'S STATEMENTS AND SHOULD NOT HOLD AN EVIDENTIARY HEARING**

Defendant moves to suppress statements and requests that the United States prove that all statements were voluntarily made, and made after a knowing and intelligent Miranda waiver. Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether Defendant's statements were voluntary. Defendant's motion to suppress statements should be denied without an evidentiary hearing because he failed to allege a specific factual dispute, and failed to support his contentions with a sworn declaration as required by CrimLR 47.1(g).

Further, since Defendant did not provide a post-arrest statement regarding the January 1, 2008 offenses, the United States will address his post-arrest statement regarding the March 6, 2005 offenses.

**1.   Defendant Provided A Knowing, Intelligent, and Voluntary Miranda Waiver**

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the

statement was made after an advisement of Miranda rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should not be found in the "absence of police overreaching").

A valid Miranda waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369, 374-75 (1979). To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden of establishing the existence of a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373. In assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality of the circumstances surrounding the interrogations. See Moran v. Burbine, 475 U.S. at 421. Factors commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not have trouble understanding questions, gave coherent answers, and did not ask officers to notify parents), (2) the defendant's familiarity with the criminal justice system (see United States v. Williams, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the criminal justice system from past encounters), (3) the explicitness of the Miranda waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant signed a written waiver), and (4) the time lapse between the reading of the Miranda warnings and the interrogation or confession. See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite 15-hour delay between Miranda warnings and interview). Furthermore, if there are multiple interrogations, as occurred in this case, repeat Miranda warnings are generally not required unless an "appreciable time" elapses between interrogations. See United States v. Nordling, 804 F.2d 1466, 1471 (9th Cir. 1986).

On March 6, 2005, Defendant was a 33-year old United States Citizen who was intimately familiar with the process of being arrested at a Port of Entry for alien smuggling. The CBP Officers

scrupulously honored the letter and spirit of Miranda in carefully advising Defendant of his Miranda rights prior to any post-arrest custodial interrogation. Defendant was advised of his Miranda rights in his native language before the interrogation. Defendant orally agreed to waive his Miranda rights and there is no evidence that he was coerced or threatened in any way. Based on the totality of the circumstances, Defendant's statements should not be suppressed because his Miranda waiver was knowing, intelligent, and voluntary.

**2.     Defendant's Statements Were Voluntary**

The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness of a waiver of Miranda rights. See Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir.1990). Courts look to the totality of the circumstances to determine whether the statements were "the product of free and deliberate choice rather than coercion or improper inducement." United States v. Doe, 155 F.3d 1070, 1074(9th Cir. 1998)(en banc).

A confession is involuntary if "coerced either by physical intimidation or psychological pressure." United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)). In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'" Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert. denied, _ U.S. _, 124 S. Ct. 446 (2003) (quoting Haynes v. Washington, 373 U.S. 503, 513 (1963)). Psychological coercion invokes no per se rule. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court must "consider the totality of the circumstances involved and their effect upon the will of the defendant." Id. at 1031 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973)).

In determining the issue of voluntariness, this Court should consider the five factors under 18 U.S.C. § 3501(b). United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995). These five factors include: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he or she was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he or she was not required to make any statement and that any such statement could be used against him, (4) whether or not such

defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. 18 U.S.C. § 3501(b). All five statutory factors under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made. See Andaverde, 64 F.3d at 1313.

As discussed previously, Defendant was read his Miranda rights and Defendant explicitly stated that he understood his Miranda rights and agreed to waive those rights. See United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002). Defendant's statements were not the product of physical intimidation or psychological pressure of any kind by any Government agent. There is no evidence that Defendant's will was overborne at the time of his statements. Consequently, Defendant's motion to suppress his statements as involuntarily should be denied.

### 3. Defendant's Motion To Suppress Should Be Denied Without An Evidentiary Hearing

This Court can and should deny (without prejudice) Defendant's motion to suppress statements without an evidentiary hearing because Defendant failed to (1) allege a specific factual dispute, and (2) provide a sworn declaration in support of her motion to suppress.

#### a. Defendant Failed To Allege a Specific Factual Dispute

An evidentiary hearing is required if a defendant's motion to suppress and supporting declarations or affidavits fail to allege a specific factual dispute. See United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving papers are definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of [material] fact . . . are at issue"). Where a defendant fails to provide a specific factual dispute of any material fact, the Court is not required to hold an evidentiary hearing. See United States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (District Court is not required to hold an evidentiary hearing where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (finding that the motion to suppress was "akin to

1 boilerplate motions that lay no factual foundation" and that the unsworn representations of counsel were
2 "too indefinite and conjectural to require the government to respond"); United States v. Feola, 651 F.
3 Supp. 1068, 1119 (S.D. N.Y. 1987), aff'd without decision, 875 F.2d 857 (2d Cir. 1989) (denying
4 motion for Miranda hearing to determine admissibility of confession where there was "no real allegation
5 of [] police coercion").

6 Defendant failed to specifically identify the statements that he seeks to suppress or allege any specific factual or legal dispute regarding the admissibility of the statements. Defendant did not allege that the CBP Officers failed to advise Defendant of his Miranda rights, that the Miranda rights provided were somehow defective, that his Miranda waivers were not knowingly, intelligently, or voluntarily made, or that the statements were involuntarily coerced by CBP Officers or other Government agents. In essence, Defendant's motion to suppress is pure boilerplate and lacks sufficient definiteness, clarity, and specificity to enable the Court to rule on the motion or allow the Government to prepare for any motion to suppress statements.

    **b. Defendant's Motion Is Not Supported By Declaration As Required By CrimLR 47.1(g)**

Where a defendant fails to submit a declaration in support of the factual allegations in a motion in accordance with local rules -- such as CrimLR 47.1(g)(1) for this Court -- the Court need not grant an evidentiary hearing. See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991) (District Court did not abuse its discretion in denying evidentiary hearing because defense counsel's declaration was insufficient to meet the requirements of the local rules for the Central District of California which requires motions be supported by a declaration signed by an individual who is competent to testify about the facts); Moran-Garcia, 783 F. Supp. at 1268-74 (District Court for the Southern District of California had discretion to deny an evidentiary hearing when the defendant's suppression motion was not supported by a declaration of an individual who had personal knowledge of the events). Local Rule 47.1(g)(1) provides that all "[c]riminal motions requiring a predicate factual finding shall be supported by declaration(s)."

Here, Defendant has failed to support his allegations with a declaration as required by CrimLR 47.1(g). As such, this Court should deny Defendant's motion to suppress.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant's motions except where unopposed.

DATED: July 14, 2008

                        Respectfully Submitted,

                        KAREN P. HEWITT
                        United States Attorney

                        */s/ Paul L. Starita*
                        PAUL L. STARITA
                        Assistant U.S. Attorney
                        Attorneys for Plaintiff
                        United States of America
                        Email: paul.starita@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0138-BEN |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| JONATHAN NICK MORALES, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, PAUL L. STARITA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendant's Motions to: (1) compel discovery; (2) suppress statements; and (3) hold a voluntariness hearing, together with statement of facts and memorandum of points and authorities on the following by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1.    Siri Shetty, Esq.
           Attorney for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

    1.    N/A.

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 14, 2008.

                                            */s/ Paul L. Starita*
                                            PAUL L. STARITA